UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CAROL PAQUETTE, | Civil Action No.: 19-12006 |
| | Honorable Marianne O. Battani |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |
| _____/ | |

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 8, 9]

Plaintiff Carol Paquette appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- Paquette's motion [ECF No. 8] be **DENIED**;

- the Commissioner's motion [ECF No. 9] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     BACKGROUND

### A.     Background and Disability Applications

Paquette was born on July 1, 1957, making her 58 years old at the time of her alleged onset date of November 30, 2015. [ECF No. 6, PageID.144]. She has past relevant work as a secretary. [ECF No. 6, PageID.41]. Paquette alleged disability due to cervical spondylotic myelopathy, spin, neck front and back, problems with leg, hands and left foot, and numbness in legs, feet and arms. [ECF No. 6, PageID.70-71, 176].

After the Commissioner denied her application initially, Paquette requested a hearing, which took place in April 2018 and during which she and a vocational expert (VE) testified. [ECF No. 6, PageID.47-69]. In a July 2018 written decision, the ALJ found Paquette not disabled. [ECF No. 6, PageID.32-42]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Paquette timely filed for judicial review. [*Id.*, PageID.21-23; ECF No. 1].

**B.   The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Paquette was not disabled.  At the first step, she found that Paquette had not engaged in substantial gainful activity since her alleged onset date.  [ECF No. 6, PageID.37].  At the second step, the ALJ found that Paquette had the severe impairments of cervical spine and lumbar spine disorders (degenerative disc disease with herniated discs and stenosis, status-post anterior and posterior cervical decompression and fusion, lumbar spondylolisthesis with stenosis), De Quervain's tenosynovitis,[3] left thumb osteoarthritis and obesity.  [*Id.*, PageID.37].  The ALJ determined that Paquette's alleged impairments of psoriasis and gastroesophageal reflux disease were not severe.  [*Id.*, PageID.37].  And though she reported experiencing anxiety, the ALJ found that Paquette did not have any

---

[3] "De Quervain's tenosynovitis [ ] is a painful condition affecting the tendons on the thumb side of your wrist."  Mayo Clinic Staff, De Quervain's tenosynovitis, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited July 6, 2020).

4

medically determinable mental impairments. [*Id.*, PageID.38]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.38].

Between the third and fourth steps, the ALJ found that Paquette had the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a),[4] except:

> [She] could occasionally stoop, kneel, crawl, crouch, and climb ramps and stairs, but cannot climb ladders or scaffolds. She must avoid exposure to unprotected heights and avoid balancing on narrow, slippery, or moving surfaces. She could frequently handle and finger.

[ECF No. 6, PageID.38]. At the fourth step, the ALJ concluded that Paquette could perform her past relevant work as a secretary, thus rendering a finding that she was not disabled. [*Id.*, PageID.41-42].

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc.*

---

[4] "Sedentary work" requires being on one's feet for no more than two out of an eight-hour workday and sitting for about six hours of an eight-hour workday. *See* SSR 83-10, 1983 WL 31251 at *5.

*Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Paquette contends that the ALJ's decision was not supported by substantial evidence. [ECF No. 8]. The Court disagrees and recommends that the ALJ's decision be affirmed.

## B.

Paquette, in a catchall heading, argues that the ALJ's RFC decision was not supported by substantial evidence and that the ALJ erred for three reasons: (1) the ALJ relied on an incorrect assessment of Paquette's activities of daily living; (2) the ALJ incorrectly asserted Paquette's treatment was conservative; and (3) the ALJ "cherry-picked portions" of the medical record. [ECF No. 8, PageID.388-396]. Paquette asserts that "the ALJ inaccurately recounted the evidence—in several different ways," which resulted in the ALJ's findings that she "could frequently handle and finger

6

being unsupported by substantial evidence." [*Id.*, PageID.389]. Paquette essentially requests that the Court reweigh the evidence to find that she requires a more restrictive RFC, if not a finding of disabled. Such reweighing is not permissible. *DeLong v. Comm'r of Soc.Sec.,* 748 F.3d 723, 726 (6th Cir. 2014).

Most of Paquette's specific arguments under her catchall heading are referred to without application of the governing standards. And in portions of Paquette's motion, she refers generally to the medical evidence described in her statement of facts as supporting a conclusion. [*See, e.g.*, ECF No. 8, PageID.395 ("As detailed in the Statement of Facts above, Paquette provided medical evidence of significant long-term numbness and limitations on the use of her left hand, well beyond what would allow for frequent use in the daily tasks of a fulltime secretary.")]. Courts in this circuit routinely treat as waived issues "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation[.]'" *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 583-84 (6th Cir. 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995-96 (citation and internal quotation

marks omitted). "Judges are not like pigs, hunting for truffles that might be buried in the record." *Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (citation and internal quotations omitted).

Below, the Court addresses Paquette's arguments under her catchall heading.

### *1.*

The ALJ summarized Paquette's husband's reports of her daily activities as being that she was "able to prepare meals, do laundry, wash dishes, wipe counters, drive a car, go grocery shopping, and go to church." [ECF No. 6, PageID.39]. The ALJ wrote that Paquette reported the same daily activities but adding that she visited with her grandchildren. [*Id.*, PageID.41]. Paquette argues that "the actual [function] reports of Paquette and her husband are very different from the ALJ's claim—different enough to make it clear the ALJ did not consider that evidence." [ECF No. 8, PageID.390]. This argument lacks merit.

Paquette and her husband stated that, though she has pain and numbness in her neck, back and hands, she was able to prepare her own meals and "cook[s] dinner maybe 3 times a week"; did house work such as laundry, dishes, and wipe counters and sinks; she went outside "most

8

days"; drove; grocery shopped; could count change; attended bible study; visited with her grandchildren "several times a week"; and attended church. [*Id.*, PageID.192-194, 200-202]. She did not use any mobility aids such as crutches, walker, wheelchair, cane or brace. [*Id.*, PageID.196, 203]. During the hearing, Paquette stated that she enjoyed gardening but did it "sitting down." [*Id.*, PageID.61].

According to a March 2017 mental status evaluation, Paquette attended the appointment alone by car and did not require assistance preparing for the appointment. [ECF No. 6, PageID.283]. Paquette stated that her activities of daily living were done independently, though "slowly." [*Id.*, PageID.285]. She "engag[ed] in light housekeeping, laundry, cooking simple meals, shopping, check cashing, providing childcare, attending church, driving, watching TV, exercising, reading, visiting, running errands, playing video games, doing hobbies, writing notes and making appointments." [*Id.*, PageID.285].

The ALJ's summaries of Paquette's function reports are accurate, though they do not include some caveats and details that Paquette includes in her motion. [ECF No. 8, PageID.390-391]. But the ALJ was not required to recite every detail of Paquette's reports in the decision. "[T]he fact an ALJ did not specifically state every piece of evidence or every

symptom is not an error." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013).  And when determining whether a claimant is disabled, the ALJ must consider not only the claimant's reported "symptoms, including pain," but also "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *1.  The ALJ assesses the claimant's RFC based "on all the relevant medical and other evidence in the individual's case record." *Id.* at *11.

The other evidence in the record includes the March 2017 opinion from consultative examination by Harold Nims, D.O., who reported that Paquette's upper extremities had "normal function, strength, and range of motion," and that she was only mildly impaired in pushing and pulling heavy objects.  [ECF No. 6, PageID.293-294].   In April 2017, the state agency reviewer, William Jackson, M.D., opined that Paquette could perform a limited range of light work and included no handling or fingering restrictions. [*Id.*, PageID.77-79].  But after reviewing the record, the ALJ accorded Dr. Jackson's opinion only partial weight, and found that Paquette could perform only sedentary work with no climbing ladders or scaffolds; avoidance of exposure to unprotected heights and of balancing on narrow,

10

slippery or moving surfaces; and frequent handling and fingering. [*Id.*, PageID.38, 40]. The ALJ imposed those additional limitations because she credited Paquette's testimony about her ongoing musculoskeletal complaints despite treatment. [*Id.*, PageID.40].

Paquette's complaint that the ALJ did not fairly consider her self-reports cannot be squared with the fact that the ALJ relied explicitly on those self-reports to find that Paquette was more restricted than Dr. Jackson opined. And Courts in this circuit have routinely found that RFC assessments that are more restrictive than the opinion evidence are supported by substantial evidence. *See, e.g., Drinkwine v. Comm'r of Soc. Sec.*, 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019). Thus, Paquette cannot sustain her burden of showing that she requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110.

## 2.

Paquette next argues that the ALJ's decision is not supported by substantial evidence because the ALJ falsely stated that her back pain had been "treated conservatively with medication." [ECF No. 8, PageID.393 (quoting ECF No. 6, PageID.39, 41)]. She argues that conservative

11

measures failed, leading her to undergo spinal surgery. [ECF No. 8, PageID.393-394]

Contrary to Paquette's complaint, the ALJ considered Paquette's June 2016 surgery and noted her improvement afterwards. [ECF No. 6, PageID.40-41]. At her first post-operative visit in July 2016, Paquette was "doing well," and her symptoms had "improved." [*Id.*, PageID.40, 276]. Three weeks after the surgery, Paquette told the doctor that "she ha[d] been doing fairly well. Her neck pain [was] fairly minimal at this point," and her bilateral hand numbness did not change dramatically. [*Id.*, PageID.277]. X-rays showed good position of the instruments and good alignment. [*Id.*, PageID.277].

Two months after the surgery, Paquette said she was "doing very well" with "almost no pain" and some tightness in the back of the neck and shoulders," for which she would begin home exercises. [*Id.*, PageID.278]. October 2016 progress notes show further improvement of Paquette's neck pain. [*Id.*, PageID.40, 279]. She was doing exercises and getting better, her motion increased, she denied "any upper extremity pain, numbness, [or] weakness," and her sensation to light touch was intact. [*Id.*, PageID.40, 279].

The ALJ's decision leaves no doubt that she considered the medical record, including Paquette's need for surgery. And Paquette's complaint that the ALJ did not recognize the limited improvement from her treatment lacks merit; the ALJ assessed an RFC with a reduced range of sedentary work specially because of Paquette's "ongoing musculoskeletal complaints despite treatment." [ECF No. 6, PageID.40]. The ALJ weighed the evidence in the record, and this Court cannot permissibly reweigh it. *DeLong,* 748 F.3d at 726.

### 3.

Paquette's final argument under her catchall heading is that the ALJ "cherry-picked" the medical evidence. She contends that, if the ALJ had properly addressed medical evidence in the record, and not "erroneously characterized" and "unfairly summarized" doctor notes and assessments, the findings "would have resulted in a more restrictive handling and fingering RFC restriction, and potentially a finding of disability." [ECF No. 8, PageID.394-396]. This argument lacks factual and legal merit.

As a factual matter, Paquette asserts that the ALJ did not address her impairment of De Quervain's tenosynovitis, but the ALJ *did* address that that impairment and found it to be severe. [ECF No. 6, PageID.37]. Paquette then repeats her argument that the ALJ said that she received

conservative treatment without recognizing that she required spinal surgery. [ECF No. 8, PageID.394]. As noted, the ALJ did consider her spinal surgery. [*Id*, PageID.40-41].

And as a matter of law, Paquette's argument is unsustainable. She refers to evidence that she believes "would have resulted in a more restrictive handling and fingering RFC restriction, and potentially a finding of disability." [*Id.*, PageID.395-396]. But the ALJ's RFC assessment was more restrictive than the opinion evidence as it relates to Paquette's handling and fingering, meaning that the RFC assessment is supported by substantial evidence. *Drinkwine*, 2019 WL 4866144 at *3; *Chess*, 2019 WL 845986 at *7.

The Sixth Circuit has cautioned that allegations of "cherry-picking" the record are "seldom successful" because they are invitations to reweigh record evidence, which a reviewing court may not do. *See DeLong*, 748 F.3d at 726. Though the ALJ omitted from her discussion reference to some records, none warrant reversal on the facts of this case. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party.").

For all these reasons, the ALJ's decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Paquette's motion for summary judgment be [ECF No. 8] be **DENIED**; that the Commissioner's motion [ECF No. 9] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

Dated: July 29, 2020

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
